**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| In re LORI JO ANDERSON GOAD | ) | Case No. 05-60693-7 |
| | ) | |
| Debtor, | ) | |
| | ) | |
| _____ | ) | |

## <u>ORDER</u>

For the reasons stated in the accompanying memorandum, the motion of the United

States trustee to dismiss this chapter 7 case shall be and hereby is granted.

The Debtor shall have ten days from the service of this memorandum and the

accompanying order to file a notice of conversion to chapter 13.  If the Debtor fails to do so, then

this case shall be dismissed without further notice or hearing.

So ORDERED.

Upon entry of this Order the Clerk shall forward copies to the United States trustee, the

chapter 7 trustee, the Debtor and Prescott H. Gay, Sr., Esq., counsel for the Debtor.

Entered on this  __28th__ day of October, 2005.

William E. Anderson
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

In re LORI JO ANDERSON GOAD          )     Case No. 05-60693-7
                                     )
                 Debtor,             )
                                     )
_____      )

## MEMORANDUM

This matter comes before the court on a motion by the United States trustee to dismiss this case for substantial abuse.  The motion is brought under section 707(b) of the bankruptcy code.[1]   Lori Jo Anderson Goad ("the Debtor") opposes the motion.

This court has jurisdiction over this matter.  28 U.S.C. §§ 1334(a).  This is a core proceeding.  28 U.S.C. § 157(b)(2)(A).  Accordingly, this court may render a final order.

The motion will be granted.  For the reasons stated below, the Court concludes that it would be a substantial abuse of the provisions of chapter 7 for the Debtor to continue under this chapter.  The Court further concludes that the Debtor should have an opportunity to convert this case to chapter 13 wherein she can pay some amount of money to her unsecured creditors through a 36-month plan.  Accordingly the Debtor will have ten days from the date of service of this order to file a notice of conversion of this case to chapter 13.  If she fails to do so, the case shall be dismissed without further notice or hearing.

### I. Facts

---

[1]          Herein, "Section" refers to the given section in the bankruptcy code.  The bankruptcy code is codified at 11 U.S.C. § 101 et seq.

1

On February 24, 2005, the Debtor filed an individual chapter 7 petition.  She is a school teacher who is employed by Campbell County Schools.[2]  Her husband is employed as a long-haul truck driver.[3]  He spends approximately 26 days per month on the road.  Mr. Goad commutes 45 miles each way to the terminal from which his runs emanate.  He begins his eight-day trips in Virginia, goes to Los Angeles, California, and then to New Jersey, and finally back to Virginia.[4]  His compensation is calculated as a percentage of the freight bill.[5]

The Debtor scheduled real property at a fair market value of $39,000.00 with a mortgage of $64,133.00.[6]  The Debtor scheduled total secured claims in the amount of $129,019.00 and unsecured claims in the amount of $26,050.25.[7]  Much of the debt that is scheduled as secured debt is in fact unsecured because the value of the collateral is less than the amount of the debt.

She scheduled monthly gross income of $2,889.00 and monthly net income of $2,131.92.[8]  She scheduled her husband's gross monthly income at $4,143.18 and his net monthly income as $2,170.98.[9]

The Debtor and her husband have owned four different vehicles that are relevant to the consideration of the United States trustee's motion to dismiss.  The Debtor scheduled three

---

[2]    See Schedule I and Debtor's testimony, transcript of hearing, page 55: lines 1-6.  The Court found both the Debtor and Mr. Goad to be honest, credible witnesses.

[3]    See Mr. Goad's testimony, transcript of hearing, page 61: lines 9-10.

[4]    See Mr. Goad's testimony, transcript of hearing, page 62: lines 13-16.

[5]    See Mr. Goad's testimony, transcript of hearing, page 62: lines 22-24.

[6]    See Debtor's Schedule A.

[7]    See Debtor's Schedules D and F.

[8]    See Debtor's Schedule I.

[9]    Id.

2

vehicles as property in which she had an interest as of the date of petition.[10]  The Debtor had no

equity in any of these three vehicles as of the date of petition.[11]

The first is the 1997 Kia Sephia, which secured a debt of $10,406.92 on the date of

petition and which was valued by the Debtor on that date at $5,000.00.  In December of 2004,

the Debtor informed the bank that it could repossess the Kia because it was not running and

because she believed that she would be required to surrender it if she filed a bankruptcy petition.

Wachovia had not repossessed the Kia as of the date of the hearing on this matter.[12]

The second vehicle scheduled by the Debtor is a 2003 Trail Blazer.   Wachovia Bank

repossessed that vehicle.  After Wachovia sold the vehicle, there remained a deficiency of

$13,636.00 on the debt.[13]

The third vehicle is the 2004 Nissan Titan Truck that the Debtor leased for four years on

July 31, 2004, for payments of $417.89 per month.[14]  Mr. Goad uses the truck, but it is titled in

the Debtor's name.[15]  The Debtor scheduled the vehicle at a fair market value of $25,200.00.[16]

The fourth vehicle is a 2004 Nissan Murano, which the Debtor purchased on November

22, 2004, for $34,419.00.  The monthly payments are $628.44.  Mr. Goad uses this vehicle for

---

[10]     See Debtor's Schedule B.

[11]     See Debtor's Schedules B and D.

[12]     See Debtor's testimony, transcript of hearing, page 17: line 18 to page 18: line 20 for testimony
regarding the Kia.  The Debtor later reaffirmed that the Kia is inoperable. See transcript of hearing, p. 37: lines 15-
17.

[13]     See Debtor's testimony, transcript of hearing, page 17: lines 1-17 and page 27: lines 18-22.

[14]     See United States trustee's Exhibit 14 and Debtor's testimony, transcript of hearing, page 18: line
23 to page 19: lines 18-22.

[15]     Id.

[16]     See Schedule B.

his transportation.

To summarize, the Debtor currently owns two vehicles that are operable, the 2004 Nissan Murano that her husband drives and the 2004 Nissan Titan Truck that she drives.   The total monthly payments of the two vehicles is $1,046.33.

On May 11, 2005, the United States trustee filed a motion under 11 U.S.C. § 707(b) to dismiss this case on the grounds that granting relief would constitute substantial abuse.

## II. Discussion

A case under chapter 7 may be dismissed if (1) the debtors' debts are primarily consumer debts and (2) it would be a substantial abuse of the provisions of chapter 7 of the bankruptcy code to grant relief.  11  U.S.C. § 707(b)[17].

"There shall be a presumption favor of granting the relief requested by the debtor."   11 U.S.C. § 707(b).  The burden of proof and the burden of production in a motion to dismiss for substantial abuse clearly rests with the moving party, in this case the United States trustee. See 4 Collier on Bankruptcy, "Dismissal", ¶ 707.04[5][a], p. 707-27 (15th ed. rev.) (Citing Green v. Staples (In re Green), 934 F.2d 568 (4th Cir. 1991)).  But, the presumption is meant to be something more that a rule about the burden of proof since that burden would already have been

---

[17]   Section 707(b) provides:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor. In making a determination whether to dismiss a case under this section, the court may not take into consideration whether a debtor has made, or continues to make, charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

4

on the party seeking to dismiss the case.   Collier, supra.   "Therefore, it appears that the presumption is an indication that in deciding the issue, *the court should give the benefit of any doubt to the debtor* and dismiss a case only when a substantial abuse is clearly present."   4 Collier on Bankruptcy at 707-28.  (Emphasis added.)

The first issue is whether the Debtor's debts are consumer debts.  Consumer debts are those "incurred by an individual primarily for a personal, family, or household purpose".  11 U.S.C. § 101(8).  The Debtor does not deny that her debts are primarily consumer debts in this case.

We turn now to the second issue, that of substantial abuse.  In Green, the Fourth Circuit provided trial courts with guidance to determine whether granting relief to a debtor would constitute substantial abuse.  In Green, the debtor was employed as a bus driver, a job that he had held for at least 13 years.  His income exceeded his necessary expenses by $638.00 per month. He had earned $46,000.00 during 1988, but asserted that he had been out of work for six months and estimated that he would only earn $26,000.00 in 1989.  The Bankruptcy Court granted the motion to dismiss the debtor's case solely on the grounds that he had disposable income.  The United States District Court affirmed the decision of the Bankruptcy Court.

On appeal, Fourth Circuit Court of Appeals held that the fact that the debtor had disposable income beyond his expenses was not sufficient in and of itself to warrant dismissal of the debtor's case.

The Fourth Circuit Court of Appeals held that a debtor's ability to pay his or her debts when due, as determined by his ability to fund a Chapter 13 plan, does not, by itself, constitute substantial abuse.  Green, 934 F.2d at 571-572.  Rather, the Court concluded that "the

determination must be made on a case-by-case basis, in light of the totality of the

circumstances." <u>Green</u>, 934 F.2d at 572.   The Court remanded the case to the Bankruptcy Court

with instructions to consider the totality of the circumstances.

Because the Bankruptcy Court had based its decision solely on the fact that the debtor

had disposable income, the Fourth Circuit Court of Appeals first addressed the degree to which a

trial court should consider disposable income in rendering a decision on a motion under section

707(b).[18]  The Fourth Circuit first stated that the existence of disposable income does not,

without more, constitute substantial abuse.  The Court considered such a per se rule by first

looking at the Congressional history.

> The ambiguity of the statutory language is no doubt a reflection of Congress's inability to
> agree on a definition of substantial abuse which would encompass these countervailing
> considerations in all situations.   Nevertheless, in unsuccessfully attempting to carve out
> such a definition, Congress considered and rejected the use of a threshold future income
> or ability to repay test (known as "mandatory Chapter 13") as a qualification for Chapter
> 7 relief for consumer debtors. [Footnote omitted.] *In re Deaton,* 65 B.R. 663, 665
> (Bankr.S.D.Ohio 1968).

<u>Green</u>, 934 F.2d at 571.

The Court also rejected a *per se* rule in light of a fundamental precept of bankruptcy law.

"The establishment of a future income threshold of eligibility for Chapter 7 by means of the *per*

*se* rule we are urged to adopt would render this presumption [in favor of granting the relief

requested by the debtor] toothless." <u>Green</u> at 573.

Finally, the Fourth Circuit considered the Bankruptcy Code and Rules as a whole and

---

[18]        XXXX Disposable income is defined, for purposes of section 1325, which requires the debtor to
pay all of his or her disposable income into the plan, as "income which is received by  the debtor and which is not
reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. . ."
11 U.S.C. § 1325(b)(2).

6

section 109[19] of the Bankruptcy Code in particular.

> Moreover, nowhere in the Code is there a requirement that a debtor be insolvent in order to file for bankruptcy.  Section 109, which the 1984 Amendments left unchanged, allows any person to be a debtor under Chapter 7 unless he comes within one of several limited exceptions, none of which apply to consumer debtors and none of which are predicated upon anticipated income. 11 U.S.C.A. § 109 (1979 & West Supp.1990).  Section 109, taken together with the Senate report on Section 707(a) cited *infra,* provides a strong indication that Section 707(b) was intended to explicitly recognize the court's ability to dismiss a Chapter 7 petition for lack of good faith-- when "the total picture is abusive."  *Waites v. Braley, supra,* 110 B.R. at 215 (quoting bankruptcy court Opinion and Order;  *but see* 217, holding that neither bad faith nor fraud is an element required for a finding of substantial abuse).

<u>Id.</u>

As noted above, in <u>Green</u> the Fourth Circuit Court of Appeals listed five factors in

addition to disposable income that trial courts should consider when entertaining a motion to

dismiss for substantial abuse.  They are:

> (1)      Whether the bankruptcy petition was filed because of sudden illness, calamity,
>
>          disability, or unemployment;

---

[19] Section 109(b), which concerns whether a person is eligible to be a chapter 7 debtor, provides:

(b) A person may be a debtor under chapter 7 of this title only if such person is not--
> (1) a railroad;
> (2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, a New Markets Venture Capital company as defined in section 351 of the Small Business Investment Act of 1958, a small business investment company licensed by the Small Business Administration under subsection (c) or (d) of section 301 of the Small Business Investment Act of 1958, credit union, or industrial bank or similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit Insurance Act, except that an uninsured State member bank, or a corporation organized under section 25A of the Federal Reserve Act, which operates, or operates as, a multilateral clearing organization pursuant to section 409 of the Federal Deposit Insurance Corporation Improvement Act of 1991 may be a debtor if a petition is filed at the direction of the Board of Governors of the Federal Reserve System; or
> (3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan association, building and loan association, homestead association, or credit union, engaged in such business in the United States.

(2)     Whether the debtor incurred cash advances and made consumer purchases far in

excess of his ability to repay;

(3)     Whether the debtor's proposed family budget is excessive or unreasonable;

(4)     Whether the debtor's schedules and statement of current income and expenses

reasonably and accurately reflect the true financial condition;

(5)     Whether the petition was filed in good faith;

Green, 934 F.2d at 572.

At the end of the Green opinion, the Fourth Circuit Court of Appeals cited three opinions

that trial courts might find helpful in considering motions under section 707(b), thus providing

three more factors.

(6)     Whether the debtor engaged in free-wheeling spending[20];

(7)     Whether the debtor altered monthly obligations in statements to the court at least

three times[21]; and

(8)     Whether the debtor chose Chapter 7 over Chapter 13 in order to voluntarily pay

favored creditors[22].

Green, 934 F.2d at 573.

As with any totality-of-the-circumstances test, the analysis does not consist of an

accounting, rather, each factor is considered in light of its weight and relevance in the case under

consideration.  A factor that is irrelevant in one case may be determinative in another.

---

[20]     See In re Grant, 51 B.R. 385, 396 (Bankr. N.D.Ohio 1985) (Cited in Green, 934 F.2d at 573.)

[21]     See In re Peluso, 72 B.R. 732, 738 (Bankr. N.D.N.Y. 1987) (Cited in Green, 934 F.2d at 573.)

[22]     See In re Shands, 63 B.R. 121, 123 (Bankr. E.D.Mich 1985) (Cited in Green, 934 F.2d at 573.)

8

A. The Debtor's Disposable Income.

We first turn to whether the Debtor has disposable income that she could use to fund a chapter13 plan.   This is the foremost factor is to be considered by a bankruptcy court when considering a motion to dismiss a case for substantial abuse.   See In re Harrelson, 323 B.R. 176, 179 (W.D.Va. 2005).  ("[T]he ability to repay, although not a dispositive factor, is the primary factor in determining substantial abuse.")

The amount of a debtor's disposable income is important in the context of a motion under section 707(b) because it is one of three minimum amounts a debtor must pay through a chapter 13 plan if that plan is to be confirmed.[23]   In other words, it is a measure of the amount that the Debtor could pay toward his or her unsecured debt if he or she chose to file a case under chapter 13.   Disposable income may be defined as the difference between a debtor's net income and his net expenses.[24]

In a case in which a married debtor files an individual petition, it is appropriate to consider the income and expenses of both spouses.  The total gross monthly income for both the Debtor and Mr. Goad are referred to herein as "the Total Gross Monthly Income" and the total net monthly income is referred to herein as "the Total Net Monthly Income".

*Net Monthly Income.*  The United States trustee does not take issue with the amounts of

---

[23]         A debtor must commit all of his or her disposable income to plan payments if the plan is to be confirmed.  See 11 U.S.C. § 1325(b)(1)(B).  Additionally, the debtor must pay all priority claims as defined in section 507(a) in full, see 11 U.S.C. § 1322(a)(2), and must pay unsecured claims in an amount equal in an amount to what those creditors would receive if the case were a case under chapter 7 (commonly referred to as the best-interest-of-the-creditors test) see 1325(a)(4).

[24]        See footnote XXXX , supra, for the definition "disposable income" in the bankruptcy code.

9

the scheduled gross income for either the Debtor or her husband.[25]  The Debtor scheduled her

gross monthly income at $2,889.00 and her net monthly income at $2,131.92.  This includes only

her income from Campbell County and does not include income from part-time summer

employment at a day-care center.  In 2004, the Debtor earned a total of $957.31 from such part-

time employment but was unable to obtain such employment in 2005.

The United States trustee presents two sets of calculations.  In Exhibit 7, the United

States trustee used the Debtor's W-2 Statement and calculated the Debtor's Net Monthly Income

at $2,245.89.   This amount includes consideration of the $957.31.  This amount will not be used

in the analysis.

In Exhibit 10, the United States trustee calculated the Debtor's Net Monthly Income as

$2,339.15 by adding the amount of her Net Monthly Income in Schedule I, $2,131.92, and

$134.50 and $68.08 per month based on a pro rata distribution of the Debtor's federal and state

income tax returns over twelve months.  The Debtor testified that the $1,614.00 Federal tax

return was seized by the IRS to satisfy in part Mr. Goad's federal tax liability.[26]   The Debtor

also testified that she spent the $817.000 refund from the state on bills during a week in which

Mr. Goad was unemployed due to the death of the Debtor's grandmother.[27]  It is proper to

include the state refund as that constitutes money that the Debtor may spend at her discretion.

For the same reason it is not proper to include the federal income tax refund in the calculation of

---

[25]        See Statement of the United States trustee, transcript of hearing, page 4: lines 12-16. ("The income was . . . substantially correct.  We don't take issue with that.  We use our own facts as the Court will see, but that's not what the issues are.")

[26]        See Testimony of the Debtor, Transcript of Hearing, Page 13: 22 to 14: 7.

[27]        See Testimony of the Debtor, Transcript of Hearing, Page 14:line 8 to page 15:line 2.

the Debtor's Net Monthly Income.  The Debtor's Net Monthly Income is found to be $2,200.00 ($2,131.92 + $68.08).

The Debtor scheduled Mr. Goad's Gross Monthly Income at $4,143.18.  She scheduled his Net Monthly Income after taxes at $2,170.98.  This amount includes a deduction for payroll taxes.  It also includes a deduction in the amount of $967.50, which the Debtor explains are for payments on debts owed to the IRS ($367.50 monthly) to Mr. Goad's mother, Ollie Margaret Meadows ($300.00 monthly) and for groceries for the household ($300.00 monthly).  All three of these amounts are discussed below as expenses.  After eliminating these three expenses as payroll deductions, Mr. Goad's Net Monthly Income is calculated according to the Debtor's schedules at $3,138.48 ( = $4,143.18 - $1,004.70).

In Exhibit 8, which is based on Mr. Goad's 2004 W-2 Statement, the United States trustee calculated Mr. Goad's Net Monthly Income as $3,284.26.[28]  In Exhibit 9, which is based on the Debtor's Pay Statements for the pay periods ended October 7, 2004, through February 25, 2005, the United States trustee calculates Mr. Goad's Gross Monthly Income $4,217.05 and his monthly tax deductions to be $1,019.18.[29]   Based on these amounts, the United States trustee calculates Mr. Goads' Net Monthly Income to be $3,197.87.[30]   Because this calculation is based on the most reliable primary source, Mr. Goad's net monthly income is found to be $3,197.87.

The Total Net Monthly Income for the Debtor and Mr. Goad is found to be $5,397.87 ($2,200.00 + $3,197.87).

---

[28]      See Exhibit 8.

[29]      Exhibit 9 actually indicates that Mr. Goad's Net Monthly income is $2,354.84 by this amount includes adjustments for advances and reimbursements which are not relevant to this discussion.

[30]      See Exhibit 10.

11

*Expenses.*   We now turn to a consideration of expenses.  While the analysis of a debtors' expenses is generally the same in a "substantial abuse" motion as it is during the chapter 13 confirmation process, the purpose, and hence the scrutiny, is different.

> There, the standard is the necessary support and maintenance of the debtors and their dependents.  Some of these expenses may be more finely tuned in a chapter 13 case.  11 U.S.C. § 1325(b)(2).  Here, the standard is different.  It is one of substantial abuse.  11 U.S.C. § 707(b).  The difference is further discussed below.

In re Vansickel, 309 B.R. 189, 199, n. 19 (Bankr. E.D.Va. 2004).  Below, the Court stated:

> The purposes of § 707(b) and § 1325(b)(1)(b) are different.  Section 1325 is designed to assure that a chapter 13 debtor makes his best efforts in a chapter 13 plan. Section 707(b) is a gatekeeping provision designed to assure that chapter 7 is not abused.  The abuse sought to be prevented is "a debtor seeking to take unfair advantage of his creditors." *Green,* 934 F.2d at 572.

Vansickel, 309 B.R. at 208.

*The Debtor's expenses.*  The Debtor scheduled her monthly expenses at $2,801.95.   This amount includes mortgage payment ($415.31), Utilities ($130.00), Telephone ($165.00), DirectTV ($54.00), Home Repairs and upkeep ($300.00), Medical and Dental Expenses ($83.00), Transportation other than vehicle payments ($100.00), YMCA membership ($32.00), Recreation ($250.00), Auto Insurance ($160.00), Personal Property Taxes ($12.27), Two Vehicle Payments ($1,050.00), and a Student Loan Payment ($50.37).

The Debtor drives one of the vehicles, a 2004 Nissan Titan King Cab, and Mr. Goad drives the other vehicle, a 2004 Nissan Murano.   The monthly payments on the Titan are $417.89 and the monthly payments on the Murano are $628.44.  Because the Debtor and Mr. Goad's income and expenses are bundled and because Mrs. Goad is liable for the debts on both vehicles, it is proper to consider both car payments as the Debtor's.  The two vehicle payments

12

will be allowed *for purposes of this analysis*[31] in the total amount of $1,046.33.

Additionally, the expense for Direct TV, $54.00 is disallowed.  Cable and internet connections are unreasonable luxuries in the context of consideration of a 707(b) motion.  See In re Harrelson, 323 B.R. 176, 179 (W.D.Va. 2005).

The Debtor's total monthly expenses are allowed in the amount of $2,744.28.

*Mr. Goad's Expenses.*  On Schedule J, the Debtor scheduled four expenses totaling $2,616.67 for Mr. Goad: Blue Green Mort ($119.67); Road Expenses ($1,500.00); IRS garnishment ($367.00); and Central Va. Credit Union ($630.00).

In her answer to interrogatory #32, the Debtor indicated that Mr. Goad's monthly expenses include the following: Blue Green Resort ($119.87); Capital One Master Card ($50.00); Central Health ($100.00); Central Va. FCU ($628.44); First National Bank ($225.05); Household Bank Master Card ($15.00); IRS ($387.00); Ollie Meadows ($300.00); and Sears ($20.00).

The amount of the monthly payment that Mr. Goad has agreed to pay the IRS is not precisely ascertainable from the record.  First, in Mr. Goad's Schedule I it appears to be a $367.50 deduction from his salary.   This conclusion is based on the fact that the there is a payroll deduction on his Schedule I in the amount of $967.50, which includes the IRS payment

---

[31]        The Court is reluctant to reduce this amount for purposes of consideration of a motion to dismiss under Section 707(b).  If the Debtor were to dispose of the two vehicles and acquire two replacement vehicles for $300.00 or $350.00 per month, as the United States trustee suggested, she would incur increased repair expenses.  Indeed, the Debtor testified that saving repair expenses was the major reason that she made the purchases.  So, if the debtor were to purchase two replacement vehicles, she would be paying approximately $700.00 per month, but would also incur additional repair expenses.  While the amount of those marginal repair expenses cannot be precisely  determined, it is not unreasonable to expect that they would average at least $100.00 per month for the two vehicles.  So the Debtor could save about $246.33 ( = $1,046.33 -$800.00) per month by acquiring lesser vehicles, if she could surrender the two Titan truck and the Murano without incurring any cost.   Because this latter assumption is at best implausible, the Court has not made an adjustment to the debtor's car payment expenses.   This conclusion is for purposes of this motion only and would not necessarily apply if the Debtor converts this case to chapter 13.

13

and Mr. Goad's monthly grocery expense, which is asserted to be $300.00 per month and a payment to his mother, which is asserted to be $300.00 per month.  Second, in his Schedule J it is listed as $367.00.  Third, the Debtor indicates that the amount of the IRS garnishment is $387.00 in an answer to her interrogatories.[32]  The United States trustee apparently accepts this latter amount.[33]

The $628.44 for the vehicle payment is disallowed as part of Mr. Goad's expenses because it is included in the Debtor's expenses above.  For purposes of this analysis, the following will be allowed: Blue Green Resort Mort ($119.67); Capital One Master Card ($50.00); Central Health ($100.00); First National Bank ($225.05); Household Bank Master Card ($15.00); IRS ($387.00); Ollie Meadows ($300.00); and Sears ($20.00).  These monthly expenses total $1,216.72.

The United States trustee objects to Mr. Goad's expenses incurred over-the-road expenses as a long haul truck driver in the amount of $1,500.00.  In her response to the interrogatories of the United States trustee, the Debtor indicated that this amount consists of the following:[34]

| | |
|---|---|
| Cleaning supplies | $   20.00 |
| Showers (2 per week) | $   56.00 |
| Parking (twice monthly) | $   40.00 |
| Books of tape | $   14.00 |
| Medicines | $   30.00 |
| Meals | $1,232.00 |
| Cigars | $  114.00 |
| | $1,506.00 |

---

[32]     See Exhibit 18, Debtor's answer to interrogatory #32.

[33]     See, Statement of the United States trustee, Transcript on Hearing, page 27: line 6.

[34]     See Exhibit 17, Debtor's answer to interrogatory #31.

14

Mr. Goad testified that he is not reimbursed for meals, showers ($7.00 to $9.00 at truck stops), snacks, some tolls, and cigarettes, prescription and non-prescription medications, and books on tape.[35]

The $1,232.00 for meals is based on receipts for one week.  The Debtor and Mr. Goad do not claim his actual meal costs on his tax returns.  Rather, they take the IRS allowed standard deduction, $41 a day (allowed to the extent of 70% without providing receipts).[36]

The United States trustee argues that Mr. Goad should only be allowed $31.00 per day for meals because that is the Federal employee allowance per diem food allowance for non-metro Virginia.  The United States trustee provides no reasoning supporting the argument that Federal per diem reimbursement amount is a reflection of the expenses that an over-the-road truck driver  actually incurs.

The difference between $41.00 and $31.00 per day for meals may be easily reconciled. First, the $31 per day allowed by the Federal Government is not intended to fund the complete cost of an employee's meals.   Rather it is intended to fund the difference between eating meals prepared by a business and meals prepared at home.   This is consistent with the IRS policy allowing a deduction of only 70% of the cost of meals on the road.  It may be no coincidence that government employees are allowed $31.00 per day without providing receipts and over the road truck drivers are allowed $28.70 [ = 70% X $41.00] as a deduction per day without providing

---

[35]     See Mr. Goad's testimony, transcript of hearing, page 64: lines 24 to page 67:19.

[36]     See the Debtor's testimony, transcript of hearing, page 59: line 15 to page 60: line7.

receipts.[37]  Second,  Mr. Goad drives cross-country to California and north to New Jersey. Both

of those states, and points in between, tend to have higher costs of living than rural Virginia.

Third, Mr. Goad is, by virtue of his employment, limited in the number of restaurants that he can

frequent.  It is impossible to take an eighteen-wheeler through a fast food drive-in.  The amount

scheduled for meals, $1,232.00, is reasonable expense and would be so found by this court if

included as an expense in a chapter 13 plan.

The other expenses, with the exception of tobacco products is reasonable, if not low.

Mr. Goad's over-the-road expenses will be allowed in the amount of $1,392.00 [ = $1,506.00 -

$114.00] for purposes of this analysis.  Mr. Goad's total expenses, including the $1,216.72

above, are $2,608.72 ( = 1,392.00 + $1,216.72).

*Calculation of the Debtor's Disposable Income.*  The following two tables summarize the

Debtor and Mr. Goad's Income and Expenses as found above.

---

[37]      One income offset ("Mr. Goad's) is a deduction and one income offset (that of a Federal Employee traveling in rural Virginia) is essentially a credit.   But the issue in this matter concerns the food allowance that is considered in making the calculation.  In either case, however, the final determination of deduction or reimbursement is based on an estimate of about $41.00 to $45.00 per day for food outside the home.  It appears that the United States trustee's argument proves the Debtor's assertion that $41.00 per day for meals is reasonable.

| | Debtor | | United States trustee | | The Court | |
|---|---|---|---|---|---|---|
| Per Month | Debtor | Spouse | Debtor | Spouse | Debtor | Spouse |
| Gross Income | $2,889.00 | $4,143.18 | $2,889 | $4,217.05 | $2,889.00 | $4,217.05 |
| (-) Payroll Deductions | $757.08 | $1,972.20 | $752.43 | $1,019.18 | $757.08 | $1,019.18 |
| Net Income | $2,131.92 | $2,170.98 | $2,136.57 | $3,197.87 | $2,131.92 | $3,197.87 |
| Fed Tax Return State Tax Return | $00.00 $00.00 | | $134.50 $ 68.08 | | $ 00.00 $ 68.08 | |
| Net Income | $2,131.92 | $2,170.98 | $2, 339.15 | $3,197.87 | $2, 200.00 | $3,197.87 |
| Expenses | | | | | $2,744.28 | $2,608.72 |

| | Debtor | | United States trustee | | The Court | |
|---|---|---|---|---|---|---|
| Total Income | | $4,302.90 | | $5,537.02 | | $5,397.87 |
| Total Expenses | | $5,418.62 | | $4,473.62 | | $5,352.00 |
| Disposable Income | | <$1,115.72> | | $1,063.40 | | $   45.87 |

The Debtor could pay $1,651.32 during the pendency of a 36-month plan, an amount that would permit her to pay approximately 6.2% ($1,651.32/$26,050.25) of her scheduled unsecured debt.

While this percentage is not great, the Debtor can afford to make some contribution to her unsecured creditors through a chapter 13 plan. This primary factor to be considered by a bankruptcy court when the United States trustee has filed a motion for substantial abuse weighs slightly in favor of granting the motion.

B. Other <u>Green</u> Factors

*(1) Financial Trauma.*  The first factor other than disposable income mentioned in <u>Green</u> concerns whether the debtor has experienced a financial trauma in the time leading up to the filing of the petition. One question that this factor raises is whether the absence of a trauma is reason to

17

deny relief under chapter 7. In this case, the Debtor has not experienced a financial trauma.  Her

husband filed a petition in bankruptcy and was out of work for an extended period of time but that

was more than five years ago.  The Debtor does not assert that Mr. Goad's unemployment at that

time was a reason that she filed this bankruptcy case.

If a debtor has not experienced a large medical debt, an involuntary change in employment,

or a change in the family structure such as a divorce or the death of a spouse, should that debtor still

be afforded relief under chapter 7?   Or should this factor be one that can only weigh in favor of the

debtor?

The United States District Court for the Western District of Virginia has commented on this

issue as follows:

> Under the first factor, the bankruptcy petition was not filed because of sudden
> illness, calamity, disability, or unemployment.  Courts have held that this factor weighs in
> favor of substantial abuse when filing is not due to some "unforeseen tragedy." *In re Norris,*
> 225 B.R. 329, 333 (Bank.E.D.Va.1998);  *see In re Vansickel,* 309 B.R. 189, 211
> (Bank.E.D.Va.2004).  The [debtors] assert that the first factor requires a court to look more
> generally at the reason behind the filing.  Even so, it is clear that the [debtors] did not file
> due to an unforeseen tragedy.  Rather they filed because of sizeable debt which they
> gradually incurred over the years.  Therefore, the first factor weighs in favor of a substantial
> abuse finding.

Harrelson, 323 B.R. at 178.[38]   The record does not indicate that the Debtor has experienced a

financial trauma in the relevant past.  This first factor weighs in favor of a finding of substantial

---

[38]      Cf. In re Attanasio, 218 B.R. at 230-231.  ("Several courts have stated that a factor to be
considered in determining substantial abuse is whether the debtor's bankruptcy petition was filed because of sudden
illness, calamity, disability, or unemployment. [Citing Green].  The reasoning appears to be that a debtor whose
petition was filed because of an intention to incur debts without the ability to pay, should not be entitled to a Chapter
7 discharge, but, that a debtor whose bankruptcy petition was filed because of sudden illness, calamity, disability,
unemployment, or other unforeseen forces over which there was no control, should be entitled to a Chapter 7
discharge. [¶]  This Court respectfully disagrees.   Clearly, bankruptcy is not limited to those debtors whose
difficulties resulted from calamity and had Congress intended for calamity to be a threshold eligibility requirement
for Chapter 7 relief it could have included that factor.  Section 707(b) was intended and designed to address
economic issues, therefore, it should be interpreted in a manner that focuses on a debtor's need for bankruptcy relief,
rather than in a manner that attaches other significance to the reasons for the debtor's need for bankruptcy relief.")

18

abuse.

*(2) Excessive Credit.*  The second factor requires the court to ascertain whether the Debtor

incurred cash advances and made consumer purchases far in excess of his or her ability to pay.

The United States trustee does not assert that the Debtor has taken any cash advances.  The United

States trustee does argue that the Debtor should have purchased vehicles that would resulted in

monthly car payments of less than the $1,046.33 per month that Debtor incurred for her vehicle and

that of her husband.   The court agrees that the Debtor could have acquired reliable late-model

transportation for less. This factor weighs slightly in favor of granting the motion of the United

States trustee.

*(3) Excessive Budget.*  The third factor concerns whether the Debtors' proposed budget is

excessive or unreasonable.  It is first necessary to place this factor in context with the other factors

in light of the purpose of the inquiry.  As one court has stated:

> Any determination of "substantial abuse" necessitates some evaluation of the debtors'
> expense and income statements, and thus some scrutiny of their personal spending habits, In
> re Gyurci, 95 B.R. 639, 643 n.3 (Bankr. D. Minn. 1989), but this Court's role is not to
> formulate the debtors' budget.   Instead, it is to act if there is clear evidence of abuse.   The
> last line of § 707(b) grants a presumption in favor of granting relief to the debtor, and this
> presumption should apply when examining the debtors' schedules.   A stricter interpretation
> would lead to non-uniformity and confusion as judges pass personal judgement about how
> people should spend their money.

In re Tefertiller, 104 B.R. 513, 514-515 (Bankr. N.D.Ga. 1989).

The United States trustee argues that the Debtor's budget is excessive.   Other than Mr.

Goad's over-the-road expenses (which this court finds substantially reasonable) and the vehicles,

the United States trustee does not find fault with the Debtor's budget.  The Court believes that a

number of entries in the Debtor's Schedule I and J should be adjusted significantly, but this is based

on duplicative accounting, a fact that is better considered under the fourth factor below.

19

*(4) Accuracy of the Debtors' Schedules and Statement of Financial Affairs.*  The fourth factor for consideration is whether the Debtors' schedule and statement of current income and expenses reasonably and accurately reflect their true financial condition.  In this case, the Debtors' Schedules I and J contain entries that are either duplicative or wrong.

First, there are duplicate entries: (1) Mr. Goad's IRS garnishment ($367.50) appears as a deduction from Income on his schedule I and again as an expense on his Schedule J ($367.00); and (2) the entry for Mr. Goad's $628.44 monthly vehicle payment appears twice, once as part of a $1,050.00 expense on the Debtor's schedule J and again as a $630.00 expense on Mr. Goad's Schedule J.

Second, at least two entries are in the wrong place.  The $300.00 per month payment from Mr. Goad to his mother and his asserted monthly expense of $300.00 for food both appear as a deduction from his pay check on his Schedule I, not as a monthly expense on his Schedule J. Additionally, neither of these two expenses are specifically identified.

Finally, a number of Mr. Goad's legitimate and allowable expenses do not appear on his Schedule J, but do appear on the Debtor's answer to interrogatory #32.[39]  They include Capital One Master Card ($50.00); Central Health ($100.00); First National Bank ($225.05); Household Bank Master Card ($15.00); and Sears ($20.00).   These payments appear to arise from actual, necessary debts and are not challenged by the United States trustee.  Indeed, this court has found it proper to consider them in calculating the Debtor's disposable income.

It is irrelevant that this court believes that the Debtor's schedules are the result of careless

---

[39]      <u>See</u> Exhibit 18.

work and not an attempt to deceive.[40]  Inaccuracy is a factor and is relevant regardless of a debtor's

motive.  See In re Harrelson, 323 B.R. 176, 179 (W.D.Va. 2005).  This factor weighs in favor of

granting the United States trustee's motion to dismiss this case.

*(5) Bad Faith.*   The United States trustee does not argue that the Debtor filed this petition in

bad faith.


### *III. Conclusion*

There are a number of factors that weigh in favor of granting the motion of the United States

trustee.  First, the Debtor would have some disposable income if she chose to file a chapter 13

petition.  Second, the Debtor has experienced no financial trauma. Third, the budget is somewhat

excessive in that there are two rather large vehicle payments.  Fourth, the Debtor's schedules are

not accurate.  Applying the Green factors, this Court concludes that it would be a substantial abuse

of the provisions of chapter 7 of the bankruptcy code to permit the Debtor to continue as a debtor

under this chapter.

The court will issue an appropriate order.

The Debtor shall have ten days from the service of this memorandum and the accompanying

order to file a notice of conversion to chapter 13.  If the Debtor fails to do so, then this case shall be

dismissed without further notice or hearing.

Upon entry of this Memorandum the Clerk shall forward copies to the United States trustee,

the chapter 7 trustee, the Debtor and Prescott H. Gay, Sr., Esq., counsel for the Debtor.

---

[40]        This conclusion is based on the fact that the Court found the Debtor to be an honest and credible
witness, and that the Debtor, to her detriment, omitted a number of legitimate expenses.

Entered on this  28th  day of October, 2005.

_____
William E. Anderson
United States Bankruptcy Judge